UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                                   07 CR 462 (LAP)

   -against-

                                                                                    NOTICE OF MOTION

CHARLES BLAMO, and
CALVIN SWEN
------------------------------------------------------------X

       PLEASE TAKE NOTICE that upon the annexed Memorandum of Law and declaration of Julia L. Gatto, duly executed on the 8th day of May, and the Exhibits attached hereto, the undersigned will move this Court on behalf of defendant Calvin Swen, before the Honorable Loretta A. Preska, in the Southern District of New York, at a date and time to be set at the convenience of the Court for an Order dismissing the Indictment as legally insufficient, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 9, 2008

                                                                  Yours, etc.

                                                                  /S/
                                                        Julia L. Gatto  (JLG 1653)
                                                        Maurice H. Sercarz  (MHS 7040)
                                                       *Attorneys for Defendant Calvin Swen*
                                                        Sercarz & Riopelle, LLP
                                                        152 W. 57th Street – 24th Floor
                                                        New York, New York 10019
                                                        (212) 586-4900

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                 07 CR 462 (LAP)

    -against-

                                                NOTICE OF MOTION

CHARLES BLAMO, and
CALVIN SWEN
------------------------------------------------------------X

## **DECLARATION AND MEMORANDUM OF LAW**

JULIA L. GATTO, declares as follows, pursuant to 28 U.S.C. § 1746:

      I am an attorney admitted to practice law in the State of New York and before the bar of this Court. I am an associate of Sercarz & Riopelle, LLP, the firm appointed pursuant to the Criminal Justice Act to represent Mr. Swen in the above-referenced criminal case.

      This Declaration and Memorandum of Law is made in support of Mr. Swen's pre-trial motion, pursuant to Fed. R. Crim. P. 12(b), for a Court Order dismissing the Indictment as legally insufficient and for such other and further relief as this Court may deem just and proper.

### **Introduction**

      Mr. Swen was charged in a one count indictment with participating in a conspiracy the object of which was to violate § 514 of Title 18 of the United States Code – the statute proscribing, *inter alia*, the passing, uttering, or transferring of *fictitious obligations*. As explained below, a fictitious obligation is a very particular type of phony instrument. While a *counterfeit obligation* is a document that is altered to look like

genuine currency, a *fictitious obligation* is a document that purports to be a financial instrument that, in fact, never was minted or existed.  In other words, a defendant violates § 514 when, with intent to defraud, he possesses or transfers a document that, while not confusingly similar to actual United States currency, falsely suggests that it was issued by the United States or some other political entity.

In Mr. Swen's case, the government's allegations do not assert that he or his co-conspirators attempted to transfer or otherwise criminally possessed a fictitious obligation.  Instead, the government alleges, in the Complaint (attached hereto as Exhibit A) and the Indictment (attached hereto as Exhibit B), that the defendants employed a fraudulent scheme in which they purported to have o*ne hundred dollar bills in United States currency* which, in fact, were not genuine currency but merely regular white copy paper.  Accordingly, even accepting the government's allegations as true, the government can not, and will not at trial, be able to prove that Mr. Swen's conduct involved *fictitious obligations* in violation of 18 U.S.C. § 514.  Because the Indictment fails as a matter of law, the Indictment must be dismissed now before the trial in this matter.

## STATEMENT OF FACTS

Defendant was arrested on May 1, 2007 on Complaint 07 MAG 681 (Exhibit A) in which the government asserted that there was probable cause to believe that Mr. Swen conspired to violate 18 U.S.C. § 514.  In the Complaint, FBI Special Agent Co averred that Mr. Swen and his co-defendant were involved in a scheme involving a large quantity of regular white copy paper (like that used in nearly every office) which the defendants purported to be ten million dollars in legitimate United States currency that had been dyed to look like regular paper.  Agent Co explained:

> On or about April 20, 2007, I, acting in an undercover capacity, met with two individuals, one of whom was later identified as Calvin Swen. The co-conspirators were under the impression that I had access to large sums of United States currency. At this meeting the co-conspirators told me that the United States government had attempted to send United States currency to Sierra Leone, Africa, but that rebels constantly hijacked the money. To combat this, according to the co-conspirators, the United States government dyed the money white to avoid detection by the rebels. According to the co-conspirators, this dying process could be undone using special chemicals and legitimate United States currency, in particular, $100 bills. At one point during this meeting, … the co-conspirators … demonstrated the process of turning the white paper in[to] **legitimate $100 bills in United States currency.**

Exhibit A, ¶ 4, 5 (emphasis added). According to the undercover agent, he agreed with the "co-conspirators" to provide five million dollars in the form of $100 bills that, along with the special chemicals, would be used to convert the white paper into ten million American dollars. In exchange, the agent would receive 30% of the converted ten million dollars. Id. ¶ 5. At the conclusion of this meeting, the parties arranged "to meet at a later date to convert the $10 million in 'white money' back to **legitimate United States currency**." Id.

According to Co, on May 1, 2007 at a hotel in New York City, Swen brought to him a duffel bag containing "eight large bricks of white paper." Id. ¶ 10(a). At that meeting, Co reports that "[o]n several occasions, I asked, and Swen confirmed, that **the white paper was actually legitimate United States currency**." Id. ¶ 10(b) (emphasis added). Mr. Swen was arrested thereafter.

On May 23, 2007, the government filed Indictment 07 CR 462 (Exhibit B) charging Mr. Swen, in one count, with participating in a conspiracy the object of which was to violate 18 U.S.C. § 514. The Indictment tracks the language of the statutes

3

charged and offers the following factual details (the same as those described in more detail in the Complaint):

>    a.   On or about April 20, 2007, Charles Blamo … and Calvin Swen … met with a third individual in a private room at a restaurant in New York, New York.
>
>    b.   On or about May 1, 2007, Charles Blamo … and Calvin Swen … went to a hotel in New York, New York.

Id. ¶ 3.

## ARGUMENT

Even accepting *arguendo* the government's allegations as true, defendant did not conspire to violate 18 U.S.C. § 514 because, as explained repeatedly in the above-highlighted portions of the government's Complaint, defendant's alleged scheme did not involve *fictitious obligations* but, instead, involved white copy paper which defendant purported to be *legitimate United States currency*.

>    Section 514 provides, in relevant part:
>
>    Whoever, with the intent to defraud … passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States … any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization, shall be guilty of a class B felony.

18 U.S.C. § 514. When introduced into legislation in 1995, then-Senator Alfonse D'Amato explained the scope of the statute, highlighting that, unlike already existing anti-counterfeiting legislation, this statute only applies to criminal conduct involving nonexistent instruments:

>    This legislation combats the use of factitious [*sic*] financial instruments to defraud individual investors, banks, pension funds, and charities. These fictitious instruments have been called many names, including prime bank

4

> notes, prime bank derivatives, prime bank guarantees, Japanese yen bond, Indonesian promissory notes, U.S. Treasury warrants, and U.S. dollar notes …
>
> ***
>
> *Because these fictitious instruments are not counterfeits of any existing negotiable instrument*, Federal prosecutors have determined that the manufacture, possession, or utterance of these instruments does not violate the counterfeit or bank fraud provisions contained in chapters 25 and 65 of title 18 of the United States Code. …
>
> This bill makes it a violation of Federal law to possess, pass, utter, publish, or sell, with intent to defraud, any items purporting to be negotiable instruments of the U.S. Government, a foreign government, a State entity, or a private entity. It closes a loophole in Federal counterfeiting law.

141 Cong. Rec. S9533-34 (emphasis added).

  Because the statute is relatively new there are few cases interpreting its language. However, the few Courts that have analyzed the statute universally have confirmed that, unlike prosecutions under other counterfeiting statutes, § 514 only reaches conduct involving documents purporting to be instruments that never actually existed. The Ninth Circuit explained:

> The distinction that emerges is this: A "counterfeit" obligation is a bogus document contrived to appear similar to an existing financial instrument; a "fictitious" obligation is a bogus document contrived to appear to be a financial instrument, where there is in fact no such genuine instrument, and where the fact of the genuine instrument's nonexistence is presumably unknown by, and not revealed to, the intended recipient of the document.
>
> …[T]he phrase "false or fictitious instrument" in § 514 [refers] to nonexistent instruments, whereas the phrase "falsely made, forged, counterfeited, or altered obligation" … refers to doctored up versions of obligations that truly exist. So, for example, a phony hundred dollar bill might be unlawful pursuant to … the counterfeit statute, while a document purporting to be a negotiable "Federal Treasury Warrant," or which there are no genuine versions, might fall under the fictitious obligation statute."

***

5

> …[T]he very purpose of [§ 514] is to supplement the preexisting counterfeit laws by criminalizing bogus obligations that are not copies of any *actual* obligation.

United States v. Howick, 263 F.3d 1056, 1067 (9th Cir. 2001)(emphasis in original); see also United States v. Morganfield, 501 F.3d 453, 458-61 (5th Cir. 2007)(reversing defendants' § 514 convictions because their scheme's objective was to pass bank checks which, although fraudulent, were not "nonexistent type[s] of security[ies]" covered by the statute).

Here, accepting the Complaint's allegations as true, defendants' scheme did not involve a "nonexistent type of security" and, therefore, can not be prosecuted under 18 U.S.C. § 514. Instead, according to the government's proffer in the Complaint, defendants attempted to defraud the undercover agent by purporting that sheets of white copy paper actually were legitimate one hundred American dollar bills. Indeed, in his affidavit, Agent Co reports that, in his last meeting with defendant Swen, he was careful to confirm that the schemes' objective was to transfer *legitimate* United States currency. He avers, "[o]n several occasions, I asked, and Swen confirmed, that the white paper was actually legitimate United States currency." Exhibit A, ¶ 10(b).

Therefore, the documents at issue in defendants' case are not "fictitious obligations." As explained above, a fictitious obligation is "a bogus document [*here, the white copy paper*] contrived to appear to be a financial instrument [*here, one hundred American dollar bills*] where there is in fact no such genuine instrument …." Howick, 263 F.3d at 1067. Of course, one hundred American dollars bills do exist. Accordingly, defendants' offense, if any, can not be prosecuted under 18 U.S.C. § 514 and the Indictment now must be dismissed.

**<u>Conclusion</u>**

      For all the foregoing reasons, Calvin Swen respectfully requests that the Court grant the relief he seeks herein.

Dated: New York, New York
       May 9, 2008

                                      Respectfully submitted,

                                          /S/
                               _____
                               SERCARZ & RIOPELLE, LLP
                               Julia L. Gatto (JLG 1653)
                               Maurice H. Sercarz (MHS 7040)
                               152 W. 57th Street, 24th Floor
                               New York, New York 10019
                               (212) 586-4900