Approved: _____
          Todd Blanche
          Assistant United States Attorney

Before:   HONORABLE THEODORE H. KATZ
          United States Magistrate Judge
          Southern District of New York

07 MAG    681

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :    COMPLAINT
                                :
          - v. -                :    Violation of
                                :    18 U.S.C. § 371
CALVIN SWEN,                    :
     a/k/a "Jerome",            :
                                :    COUNTY OF OFFENSE:
          Defendant.            :    NEW YORK
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   BEMPSEY G. CO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

                         COUNT ONE

   From at least in or about April 2007, up to and including on or about May 1, 2007, in the Southern District of New York and elsewhere, CALVIN SWEN, a/k/a "Jerome", the defendant, together with others known and unknown, unlawfully, wilfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Section 514 of Title 18 of the United States Code.

   It was a part and object of the conspiracy that CALVIN SWEN, a/k/a "Jerome", the defendant, together with others known and unknown, unlawfully, willfully and knowingly, and with intent to defraud, would and did pass, utter, present, offer, broker, issue, sell, and attempt and cause the same, and with like intent possess, within the United States, false and fictitious instruments, documents, and other items appearing, representing, purporting, and contriving through scheme and artifice, to be actual securities and other financial instruments issued under the authority of the United States, in violation of Section 514 of Title 18 of the United States Code.

   (Title 18, United States Code, Section 371.)

The bases for deponent's knowledge and the foregoing charge are, in part, as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (the "FBI") and I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law-enforcement officers and agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. In early April 2007, federal law enforcement received information about a potential scheme involving "white money." Two individuals, one of whom was later identified as CALVIN SWEN, a/k/a "Jerome", the defendant, claimed to have $10 million in United States currency that had been altered to appear to look like white paper.

3. On or about April 17, 2007, the FBI arranged to have me, acting in an undercover capacity, meet with the two individuals to discuss this scheme. The meeting was arranged for April 20, 2007, at a restaurant in Manhattan.

4. On or about April 20, 2007, I, acting in an undercover capacity, met with two individuals, one of whom was later identified as CALVIN SWEN, a/k/a "Jerome", the defendant (the "co-conspirators"). The meeting took place in a private room at a restaurant in Manhattan. The meeting was recorded using audio and visual equipment. The co-conspirators were under the impression that I had access to large sums of United States currency. At this meeting, the co-conspirators told me that the United States government had attempted to send United States currency to Sierra Leone, Africa, but that rebels constantly hijacked the money. To combat this, according to the co-conspirators, the United States government dyed the money white to avoid detection by the rebels. According to the co-conspirators, this dying process could be undone using special chemicals and legitimate United States currency, in particular, $100 bills. At one point during this meeting, SWEN left the private room and returned with a black case that appeared to be a video or camera case. The other co-conspirator took out a stack of what he claimed to be "white money" from the black case. The "white money" was wrapped in cellophane, and the other co-conspirator cut open the cellophane and removed 2 blank pieces of white paper. The co-conspirators then demonstrated the process of turning the white paper into legitimate $100 bills in United

States currency.

     5.   At the conclusion of this meeting, we agreed to meet at a later date to convert the $10 million in "white money" back to legitimate United States currency. Based on this arrangement, I was going to deliver $5 million in United States currency in the form of $100 bills to be used to convert the $10 million in "white money" back to its original form. For this service, I was going to receive 30% of the $10 million in "white money."

     6.   Thereafter, there were several recorded conversations between myself, acting in an undercover capacity, and the co-conspirators. On or about April 30, 2007, I, acting in an undercover capacity, met with CALVIN SWEN, a/k/a "Jerome", the defendant, and another co-conspirator, at a hotel in Manhattan. At this meeting, we reiterated and confirmed our agreement to meet on May 1, 2007, at another hotel in Manhattan. The plan that was arranged was for an armored car to deliver my $5 million to the hotel vault, and that I would secure a hotel room to conduct the transaction. The co-conspirators would bring the $10 million in "white money" and the necessary chemicals to convert the "white money" back to legitimate United States currency. This meeting was recorded.

     7.   The following day, May 1, 2007, I, acting in an undercover capacity, contacted the co-conspirators and provided them with the address and room number of the hotel where I had gotten a room. I arranged to meet with them at approximately 11:00 a.m. The hotel room was wired for audio and visual recording. CALVIN SWEN, a/k/a "Jerome", the defendant, arrived at the hotel address, and came to the pre-arranged room, and the following events and conversations took place:

     a.   After SWEN entered the room, he insisted on seeing my $5 million before he would show me the "white money." I insisted on SWEN showing me his "white money" before I would show him the money that I had brought. I had informed SWEN that the armored vehicle had delivered the $5 million to the hotel, and that the money was in a secure location at the hotel.

     b.   During the course of this meeting, SWEN and I had disagreements and negotiations about how the transaction should take place. Also during the course of this meeting, SWEN left the room several times. He told me that he was going downstairs to talk to another co-conspirator because his cellular telephone did not work in the hotel room. SWEN stated to me that he was relaying the various discussions I was having with him to

00003

another individual. SWEN also used my cellular telephone several times to contact another co-conspirator.

   c. At approximately 2:00 p.m., SWEN and I could not reach an agreement on how the transaction would take place. I called off the transaction and SWEN left the room.

  8. Shortly after SWEN left the hotel room, one of the co-conspirators contacted me on my cellular telephone. The co-conspirator agreed to show me the "white money." I told the co-conspirator that I had checked out of the hotel room, and that I would contact him at a later time.

  9. Thereafter, CALVIN SWEN, a/k/a "Jerome", the defendant, and another co-conspirator contacted me several times, in an attempt to set up a meeting. Due to the loss of time and money from the failed attempt earlier in the day, the co-conspirators agreed to increase my percentage of the $10 million in "white paper" to 35%.

  10. Eventually, I, acting in an undercover capacity, agreed to meet the co-conspirators at a hotel lobby in Manhattan. At approximately 7:00 p.m. on May 1, 2007, CALVIN SWEN, a/k/a "Jerome", the defendant met with me at a hotel lounge in Manhattan. At this meeting, which was recorded, the following events and discussions took place:

   a. SWEN brought a large rolling duffel bag to the meeting. After some discussion, SWEN unlocked the duffel bag and showed me its contents. Inside the duffel bag were eight large bricks of white paper. According to SWEN, each of these bricks contained $500,000 in "white money."

   b. On several occasions, I asked, and SWEN confirmed, that the white paper was actually legitimate United States currency.

   c. According to SWEN, he was only able to bring $4 million in "white money", and he stated that another co-conspirator had the remaining $6 million in "white money."

  11. Thereafter, CALVIN SWEN, a/k/a "Jerome", the defendant, was arrested.

00004

WHEREFORE, deponent prays that CALVIN SWEN, a/k/a "Jerome", the defendant, be imprisoned or bailed, as the case may be.

BEMPSEY G. CO
Special Agent
Federal Bureau of Investigation

MAY 0 2 2007

Sworn to before me this
___th day of May, 2007

_____
HONORABLE THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

00005